IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WABTEC CORPORATION,<br><br>        Plaintiff,<br><br>    v.<br><br>UNITED ELECTRICAL, RADIO AND MACHINE WORKERS OF AMERICA LOCAL UNION NO. 506<br><br>        Defendant. | Civil Action No. 1:22-cv-0028 |

## COMPLAINT

Plaintiff, Wabtec Corporation ("Wabtec" or the "Company"), by and through its undersigned counsel, files this Complaint pursuant to Section 301 of the Labor Management Relations Act ("Act"), 29 U.S.C. § 185, to vacate the December 28, 2021 arbitration award of Arbitrator William J. Miller. The award reflects a manifest disregard of the collective bargaining agreement between the Company and Defendant United Electrical, Radio and Machine Workers of America Local Union No. 506 ("Defendant" or "Union"). Indeed, the arbitrator effectively rewrote the agreement, in violation of its plain terms, and he wholly exceeded his authority.

## PARTIES

1. Wabtec, a company engaged in the business of locomotive manufacturing, operates a manufacturing facility in Erie, Pennsylvania (the "Erie Plant"). It is incorporated under the laws of Pennsylvania and has a principal place of business at 1001 Airbrake Avenue, Wilmerding, Pennsylvania 15148.

2. United Electrical, Radio and Machine Workers of America Local Union No. 506 is a labor organization that represents certain employees at the Erie Plant. Its principal place of business is at 3923 Main Street, Lawrence Park, Pennsylvania 16511.

## JURISDICTION

3. Wabtec is an employer within the meaning of 29 U.S.C. § 152(2), and it engages in a business affecting commerce.

4. The Union is a labor organization within the meaning of 29 U.S.C. § 152(5), and it is the authorized bargaining representatives of certain Wabtec employees at the Erie Plant. The Union therefore represents employees in an industry affecting commerce.

5. This Court has subject matter jurisdiction over the claims set forth herein pursuant to Section 301(a) of the National Labor Relations Act, 29 U.S.C. § 185(a), and 28 U.S.C. § 1331.

## VENUE

6. Venue is proper in this Court pursuant to Section 301(a) of the Act, 29 U.S.C. § 185(a), in that this Court has jurisdiction over the parties, which maintain principal places of business in this district. Venue is also appropriate pursuant to the provisions of 28 U.S.C. § 1391(b) as the events giving rise to this matter occurred in this district.

## THE ERIE PLANT

7. The Erie plant consists of over twenty (20) buildings, situated on a main avenue.

8. Each of the Erie Plant's buildings are specialized, meaning certain buildings specialize in manufacturing certain locomotive components and others specialize in other tasks, such as welding, sheet metal work, kitting, painting, and final assembly.

9. Building a locomotive is a multi-step process. Some buildings may be slower or busier at various points in time in the manufacturing process.

## THE COLLECTIVE BARGAINING AGREEMENT

10. Wabtec acquired the Erie Plant in a transaction with General Electric Transportation that closed on or about February 25, 2019. Subsequently, Wabtec and the Union negotiated a collective bargaining agreement, which is effective from June 4, 2019 through June

9, 2023.  Excerpts of the collective bargaining agreement are attached to this Complaint as **Exhibit A**.

11. Among many other things, the collective bargaining agreement defines the job classifications at the Erie plant.  (*Id.* at Appendix B.)  There are approximately 35 classifications in total.  (*Id.*)  One of the job classifications at the facility is the "Production Technician" job classification.  (*Id.*)

12. The parties' collective bargaining agreement also recognizes Wabtec's broad management rights to "assign" work to employees.  (*Id.* at Art. VI, Sec. 1.)  The only limitation on that right is the Company's agreement that it will take "no action . . . in violation of [the CBA]."  (*Id.*)

13. The collective bargaining agreement contains no language restricting or conditioning work assignments *within* an employee's job classification.  In other words, for example, there is no contract language limiting the Company's right to assign Production Technician work to employees in the Production Technician job classification.

14. By contrast, the CBA does contain conditions and limitations applicable to situations in which the Company assigns an employee work that it outside his or her job classification – for example, if the Company were to assign a Production Technician to perform the work of a Weld Technician 1 or a Paint Technician.  Specifically, the contract provides that "[a]bsent exceptional circumstances, employees will not be *temporarily transferred out of their classification* for more than one hundred twenty (120) consecutive calendar days for operational reasons."  (*Id.* at Art. XIV, Sec. 3(b) (emphasis added).)  It further provides that "Absent exceptional circumstances, employees will not be *temporarily transferred out of their*

*classification* for more than one hundred eighty (180) consecutive calendar days to cover for an employee on an approved leave of absence." (*Id.* at Art. XIV, Sec. 3(a) (emphasis added).)

15. The collective bargaining agreement also establishes a procedure for resolution of "any dispute over the interpretation or application of a specific provision of this Agreement." (Exhibit A at Art. XXI, Sec. 1.) The procedure consists of three grievance steps and, if necessary, arbitration. (*Id.* at Art. XXI, Sec. 4(d).) The collective bargaining agreement specifically provides that, in any arbitration between the parties, the arbitrator "shall confine his/her decision to the interpretation and/or application of the [CBA]" and "[n]o arbitrator will have the authority to add to, subtract from, or in any way change any of the terms or conditions of [the CBA], or to modify, set aside or extend such terms and conditions." (*Id.* at Art. XXI, Sec. 7(d).)

## THE GRIEVANCE, ARBITRATION, AND AWARD

16. On September 16, 2019, the Union filed Grievance Nos. 19-76 and 19-77 alleging that the Company violated the collective bargaining agreement by assigning the grievants – all Production Technicians working in the Erie Plant's Building 12 – to perform Production Technician work in the plant's Building 6 for more than 120 days. The Union claimed a violation of Article XIV, which by its plain terms establishes a time limit applicable to situations in which an employee is "temporarily transferred out of their classification." (*Id.* at Art. XIV, Sec. 3(a).) The grievances are attached as **Exhibit B**.

17. The parties were unable to resolve the Union's grievances during the steps of CBA's grievance procedure. On or about February 11, 2020, the Union filed a demand for arbitration.

18. On June 24, 2021, the parties held an arbitration before Arbitrator William J. Miller in Erie, Pennsylvania, and they later submitted post-hearing briefs. The Company's post-

hearing brief is attached as **Exhibit C**, and the Union's post-hearing brief is attached as **Exhibit D**.

19. The parties agreed that the issue before the Arbitrator was whether the Company violated Article XIV by assigning the grievants to Building 6 for longer than permitted. (Exhibit C at 6; Exhibit D at 2.) Thus, the Union argued in its post-hearing brief that "[t]he Company . . . violat[ed] Article XIV, [Section 3,] paragraph (c) of the parties CBA in the way it indefinitely . . . transfers employees *within their job classification*." (Exhibit D at 7 (emphasis added).)

20. On December 28, 2021, the Arbitrator issued his award, attached as **Exhibit E.**

21. In the award, the Arbitrator acknowledged that there was "no factual dispute in the relevant record." (Exhibit E at 15.) In particular, he acknowledged that the grievants were at all times in the Production Technician job classification, and that Wabtec assigned them Production Technician work at all relevant times. (*Id*; *see also id.* at 2 (noting that "the grievants are production tech[nicians] . . . [who] were doing production tech[nician] work when they were in building 6[,] and when they were assigned to building 12 they were doing production tech[nician] work").)

22. The Arbitrator also acknowledged that the Article XIV, Section 3(b) – the contract provision at issue – expressly states that "absent exceptional circumstances, employees will not be temporarily transferred *out of their classification* for more than one hundred (120) consecutive calendar days." (*Id*. at 18-19 (emphasis added).)

23. Nevertheless, the Arbitrator then proceeded to ignore the phrase "out of their job classification." Contrary to it, he stated that "the language of Article XIV does not clearly limit any specific type of temporary transfer" to which it applies, and he decided to apply Article

XIV's conditions to both "transfers in class and out of class." (*Id*. at 18.) He thus concluded (*id.* at 19) that "[t]he Company violated Article XIV, Section 3(b) of the [CBA] by temporarily transferring the grievants for more than 120 consecutive days," even though Wabtec assigned them Production Technician work at all times.

24. As noted, the collective bargaining agreement expressly limited the Arbitrator's authority to the contract language before him. (Exhibit A, at Art. XXI, Sec. 7(d).) He was not permitted to "add to, subtract from, or in any way change" that language, nor was he permitted to "modify, set aside or extend" that language. (*Id*.) Yet, by applying a time limit expressly applicable only to transfers *out* of job classification to a situation in which the grievants were assigned work *within* their job classification, the Arbitrator did just that. Rather than issuing an award grounded in the contract, he dispensed his own brand of injustice. He exceeded his authority, and his award was palpably wrong.

## COUNT I

25. Wabtec incorporates by reference Paragraphs 1 through 24 of this Complaint as if restated in full.

26. An arbitrator's award is valid only if it draws its essence from the parties' collective bargaining agreement. *See, e.g.*, *Akers Nat. Roll Co. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, 712 F.3d 155, 160 (3d Cir. 2013) (quoting *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir. 1969)). This means that "if the language of an agreement is clear and unequivocal, an arbitrator cannot give it a meaning other than that expressed by the agreement." *Monongahela Valley Hosp., Inc. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union AFL-CIO, CLC*, 386 F. Supp. 3d 596, 601 (W.D. Pa.), *aff'd* 946 F.3d 195 (3d Cir. 2019). In interpreting a provision, an arbitrator is not permitted to disregard plain

language setting out the situations in which a condition applies, nor is he permitted to add conditions where none exist.  *See id.* at 601-602.  In short, an arbitrator may not dispense "his own brand of industrial justice."  *Akers Nat. Roll*, 712 F.3d at 160 (*quoting United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596 (1960)).

27. Applying these principles, a reviewing court will vacate an arbitrator's award if it reflects "a manifest disregard of the agreement."  *Akers Nat. Roll*, 712 F.3d at 160.  And this Court should do so here.  The December 28, 2021 award in this case exceeded the Arbitrator's authority.  The award reflects a manifest disregard of the parties' collective bargaining agreement, effectively rewrites the agreement, and impermissibly imposes the Arbitrator's own brand of industrial justice.

## PRAYER FOR RELIEF

WHEREFORE, Wabtec respectfully requests that this Court issue a final judgment vacating the Arbitrator's December 28, 2021 award, awarding Wabtec its reasonable costs and expenses, including attorneys' fees, and such other relief at law or in equity as the Court deems appropriate under applicable law.

| | |
|---|---|
| Dated:  January 25, 2022 | /s/ Katherine J. McLay<br>Katherine J. McLay<br>kmclay@jonesday.com<br>JONES DAY<br>500 Grant Street, Suite 4500<br>Pittsburgh, Pennsylvania 15219-2514<br>Telephone: (412) 391-3939<br><br>E. Michael Rossman<br>(*pro hac vice* admission forthcoming)<br>JONES DAY<br>77 West Wacker Drive<br>Chicago, IL  60601-1692<br>Telephone:  (312) 269-4305<br>Facsimile:  (312) 782-8585<br>Email: emrossman@jonesday.com<br><br>**ATTORNEYS FOR PLAINTIFF**<br>**WABTEC CORPORATION** |